**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DWAYNE DAWSON,**

                                        **CASE NO. 2:19-CV-3788**

     **Petitioner,**                   **JUDGE EDMUND A. SARGUS, JR.**
                                       **Magistrate Judge Chelsey M. Vascura**

     **v.**

**WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,**

     **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  This matter is before the Court on the Petition, Respondent's Return of Writ,

Petitioner's Reply, and the exhibits of the parties.  For the reasons that follow, the undersigned

**RECOMMENDS** that this action be **DISMISSED**.

### I.     BACKGROUND

Petitioner challenges his convictions pursuant to his guilty plea in the Pickaway County

Court of Common Pleas on involuntary manslaughter and trafficking in heroin.  The Ohio Fourth

District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 3} In June 2016, the Pickaway County Grand Jury returned an indictment
> charging Dawson with one count of involuntary manslaughter, in violation of
> R.C. 2903.04(A), a felony of the first degree, and one count of trafficking in
> heroin, in violation of R.C. 2925.03(A)(1)/(C)(6)(a), a felony of the fifth degree.
> In August 2016, Dawson pleaded not guilty at his arraignment.

> {¶ 4} The charges stemmed from the death of Jessica Lillie, a twenty-seven year
> old woman. Jessica had been in an accident for which a doctor prescribed pain
> killers. She had become addicted to the pills; and when they ran out, she did
> heroin. On the evening of the crime, Dawson had left a dose of heroin outside of
> Jessica's home for her to retrieve. Early the next morning, Jessica was found
> cross-legged on the floor, dead.

{¶ 5} In December 2016, the matter was scheduled for a jury trial. On the day of trial, the parties presented the trial court with a "Petition to Enter Plea of Guilty." Dawson petitioned the trial court to accept his pleas of guilty to the two counts of the indictment. The petition specified that the maximum penalty for the involuntary manslaughter charge was eleven years; and the maximum penalty for the trafficking in heroin charge was twelve months. Although the petition specifically stated that the State would recommend a three year sentence, the petition, that Dawson executed, also stated:

> I also understand that if I plead "Guilty" to the charges against me, the Court may impose the same punishment as if I had plead "Not Guilty," stood trial and had been convicted by a jury.

{¶ 6} The trial court accepted the guilty pleas to both counts, entered a finding of guilt, and passed the case for sentencing until such time that the pre-sentence investigation report could be completed and reviewed.

{¶ 7} In March 2017, Dawson was sentenced. Although the State had recommended a sentence of three years in the Ohio Department of Rehabilitation and Corrections, the trial court sentenced Dawson to eleven years on the offense of involuntary manslaughter and twelve months on the offense of trafficking in heroin. The sentences were ordered to run concurrent with one another.

{¶ 8} Dawson appealed his conviction.

II. Assignment of Error

{¶ 9} Dawson assigns the following error for our review:

APPELLANT'S SENTENCE WAS CLEARLY AND CONVINCINGLY CONTRARY TO LAW.

*State v. Dawson*, 4th Dist. No. 17CA8, 2018 WL 1560075, at *1 (Ohio App. Ct. Mar, 23, 2018).

On March 23, 2018, the appellate court affirmed the judgment of the trial court. *Id*. On July 5,

2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Dawson*,

153 Ohio St.3d 1434 (Ohio 2018). On May 10, 2018, Petitioner filed an application to reopen

the appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 4, PAGEID # 115-135.) He

asserted that he had been denied the effective assistance of appellate counsel because his attorney

failed to raise on appeal a claim that the trial court violated Rule 11(F) of the Ohio Rules of

Criminal Procedure at his guilty plea hearing and sentencing, and that he was denied the

effective assistance of trial counsel due to his attorney's failure to ensure that the three-year

negotiated plea agreement had been recorded, failed to object to the trial court's violation of

Ohio Criminal Rules during the guilty plea hearing, and failed to move to withdraw Petitioner's

guilty plea. (*See* ECF No. 4, PAGEID # 160-161.) On July 26, 2018, the appellate court denied

the Rule 26(B) application. (ECF No. 4, PAGEID # 157.) On September 24, 2018, the appellate

court denied Petitioner's application for reconsideration. (PAGEID # 180.) On October 30,

2018, the appellate court denied Petitioner's motion to certify a conflict. (PAGEID # 201.) On

February 6, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal.

(PAGEID # 245.) Petitioner then moved to withdraw his plea, which was denied. The state

appellate court affirmed the convictions on direct appeal on March 23, 2018 in *State v. Dawson*,

4th Dist. Pickaway No. 17CA8, 2018-Ohio-1157. The state appellate court offered the following

discussion relating to Petitioner's request for post-conviction relief:

> {¶4} Appellant filed a petition for post-conviction relief on August 13, 2018
> alleging ineffective assistance of his trial counsel. The trial court denied
> Appellant's petition without a hearing on the basis of res judicata. The trial court
> found that Appellant should have raised the issue of ineffective assistance of trial
> counsel on direct appeal, but reasoned that he had remedied that defect by filing a
> motion to reopen his appeal under App.R. 26(B) asserting ineffective assistance
> of appellate counsel for failing to assert that Appellant's trial counsel was
> ineffective, which we denied. It is this judgment of the trial court that Appellant,
> acting pro se, appeals to this court, asserting two assignments of error.
>
> ASSIGNMENTS OF ERROR
>
> I. TRIAL COURT ABUSED IT'S [SIC] DISCRETION WHEN IT REFUSED TO
> HOLD AN EVIDENTIARY HEARING AND ADJUDICATE APPELLANT'S
> CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL WHEN
> PRESENTED WITH OVERWHELMING EVIDENCE WHICH DE HORS THE
> RECORD AND WHICH CLEARLY PROVES INEFFECTIVE ASSISTANCE
> OF COUNSEL AND A VIOLATION OF APPELLANT'S DUE PROCESS AND
> EQUAL PROTECTION OF THE LAW, A VIOLATION OF APPELLANT'S

5TH, 6TH AND 14TH U.S. CONSTITUTIONAL AMENDMENTS AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

II. TRIAL COURT ABUSED IT'S [SIC] DISCRETION WHEN IT REFUSED TO ADJUDICATE APPELLANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM BY DENYING SAID CLAIM AS BEING BARRED BY RES JUDICATA. TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS AND EQUAL PROTECTION OF THE LAW AND VIOLATED APPELLANT'S 5TH, 6TH, AND 14TH U.S. CONSTITUTIONAL AMENDMENTS AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

*State v. Dawson*, 4th Dist. No. 18CA17, 2019 WL 2897698, at *1 (Ohio Ct. App. July 3, 2019).

On July 3, 2019, the appellate court affirmed the judgment of the trial court. *Id*. On September 17, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Dawson*, 157 Ohio St.3d 1407 (Ohio 2019).

On August 30, 2019, Petitioner, proceeding without counsel, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts as follows:

1. Due Process

Due process requires that the written plea of guilty be interpreted in keeping with Petitioner's reasonable understanding and although all parties signed said document of it's clear intent, any ambiguity must be construed against the government.

2. Ineffective Assistance of Counsel

Despite the sacrosanct right to counsel, counsel did not object to the arbitrary and capricious actions of the trial judge in ignoring a negotiated plea that the judge had signed and approved.

Respondent argues that Petitioner has procedurally defaulted his claims by failing to raise them on direct appeal. The undersigned agrees.

## II. ANALYSIS

**A.      Procedural Default Standards**

Congress has provided that state prisoners who are in custody in violation of the

Constitution or laws or treaties of the United States may apply to the federal courts for a writ of

habeas corpus. 28 U.S.C. § 2254(a).  In recognition of the equal obligation of the state courts to

protect the constitutional rights of criminal defendants, and in order to prevent needless friction

between the state and federal courts, a state criminal defendant with federal constitutional claims

is required to present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c).

If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition

is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4,

6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971).  Where a

petitioner has failed to exhaust claims but would find those claims barred if later presented to the

state courts, "there is a procedural default for purposes of federal habeas." *Coleman v.*

*Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person

convicted of a crime in a state court fails (for whatever reason) to present a particular claim to

the highest court of the State so that the State has a fair chance to correct any errors made in the

course of the trial or the appeal before a federal court intervenes in the state criminal process.

This "requires the petitioner to present 'the same claim under the same theory' to the state courts

before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir.

2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly

presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives

the state courts a fair opportunity to rule on the federal law claims being asserted.  That means

that if the claims are not presented to the state courts in the way in which state law requires, and

the state courts therefore do not decide the claims on their merits, neither may a federal court do

so. As the Supreme Court found in *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977), "contentions of

federal law which were not resolved on the merits in the state proceeding due to respondent's

failure to raise them there as required by state procedure" also cannot be resolved on their merits

in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the

Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986);

*see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part

analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is

applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second,

the court must determine whether the state courts actually enforced the state procedural sanction.

Third, the court must determine whether the forfeiture is an adequate and independent state

ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*,

785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied

with and that the rule [has] an adequate and independent state ground, then the petitioner" may

still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause

sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged

constitutional error. *Id.*

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner

must show that "some objective factor external to the defense impeded counsel's efforts to

comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Constitutionally ineffective counsel may constitute cause to excuse a procedural default.

*Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  In order to constitute cause, an ineffective

assistance of counsel claim generally must "'be presented to the state courts as an independent

claim before it may be used to establish cause for a procedural default.'"  *Edwards*, 529 U.S. at

452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)).  That is because, before counsel's

ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the

Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted."

*Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).  Or, if procedurally defaulted,

petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the

ineffective-assistance claim itself."  *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000).  The

Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id*., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a

procedural default occurred, it must not consider the procedurally defaulted claim on the merits

unless "review is needed to prevent a fundamental miscarriage of justice, such as when the

petitioner submits new evidence showing that a constitutional violation has probably resulted in

a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir.

2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

**B.      Application**

Petitioner asserts that his guilty plea violates due process because the record does not

contain evidence establishing his guilt of the charges, and the terms of his plea agreement

indicated that he would be sentenced to a term of only three years.  Petitioner further asserts that

he was denied the effective assistance of trial counsel because his attorney failed to object to the

trial court's imposition of maximum terms of imprisonment.  Petitioner raised neither of the

foregoing claims on direct appeal, however, where he had the representation of new counsel.  He

may now no longer do so, under Ohio's doctrine of *res judicata*.  "It is well-settled that '[c]laims

appearing on the face of the record must be raised on direct appeal, or they will be waived under

Ohio's doctrine of res judicata.'" *Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at

*15 (S.D. Ohio May 2, 2018) (quoting *Hill v. Mitchell*, No. 1:98-cv-452, 2006 WL 2807017, at

*43 (S.D. Ohio Sept. 27, 2006) (citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104

(1967)).  Petitioner violated the *res judicata* rule set forth in *Perry* when he failed to raise his

claims on direct appeal, and, consequently, the first prong of the *Maupin* test is satisfied.

Moreover, Ohio courts have consistently relied upon the doctrine of *res judicata* to refuse to

review the merits of procedurally barred claims.  *See, e.g., State v. Cole*, 2 Ohio St.3d 112

(1982).  Further, the Sixth Circuit has held that Ohio's doctrine of *res judicata* is an independent

and adequate ground for denying federal habeas relief.  *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).  Turning to *Maupin's* independence prong, under the circumstances presented here, Ohio's doctrine of *res judicata* does not rely on or otherwise implicate federal law.  Accordingly, the undersigned finds that the first three *Maupin* factors are satisfied.

Petitioner also attempted to raise his claim of the denial of the effective assistance of trial counsel in his petition for post-conviction relief.  However, the state courts explicitly refused to address the merits of the claim as barred under Ohio's doctrine of *res judicata* and for failing to provide any evidence outside of the record in support of his claim.  *See State v. Dawson*, 2019 WL 2897698.

Petitioner may still obtain review of his claims on the merits, if he establishes cause for his procedural defaults, as well as actual prejudice from the alleged constitutional violations. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)).  A petitioner's pro se status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied*, 543 U.S. 989 (2004).  Instead, in

order to establish cause, a petitioner "must present a substantial reason that is external to himself

and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007),

*cert. denied sub nom. Hartman v. Bobby*, 554 U.S. 924 (2008).

As cause for his procedural default, Petitioner asserts that he was denied the effective

assistance of appellate counsel. The state appellate court rejected this claim in relevant part as

follows:

> Dawson contends that the trial court violated Crim.R. 11(F) by not stating, on the
> record at the change of plea hearing, the underlying agreement on which the plea
> was based.FN1. Dawson further argues that his appellate counsel was ineffective
> for failing [to] raise this argument on his direct appeal.
>
> FN1: Crim.R. 11(F) states, in pertinent part, that when a negotiated guilty plea is
> made in a felony case, "the underlying agreement upon which the plea is based
> shall be stated on the record in open court."
>
> The change of plea hearing transcript, attached to Dawson's application materials,
> reveals the following colloquy:
>
> [THE STATE]: Yes, Your Honor. Before you there is a Petition To Enter A Plea
> Of Guilty that's been executed by Mr. Dawson and his attorney. He'll be entering
> a plea of guilty to both charges and will be asking for a presentence report, and
> ask that bond be continued.
>
> THE COURT: Is that correct counsel?
>
> [DEFENSE COUNSEL]: That's correct, your honor.
>
> THE COURT: Mr. Dawson, how far did you go in school?
>
> THE DEFENDANT: I graduated high school.
>
> THE COURT: Are these your signatures on this form?
>
> THE DEFENDANT: Yes, sir.
>
> ***
>
> Although the terms of the agreement could have been stated more clearly, it is
> discernable from the transcript that Dawson would be changing his plea to guilty
> in accordance with the agreement reached in the Petition to Enter Plea of Guilty.

10

Furthermore, although there does not appear to have been any mention of the State's recommended sentence, it is clear that the trial court and the parties had the Petition to Enter Plea of Guilty before it, which explicitly states that the State would "recommend a 3 year sentence" in exchange for the guilty plea.

This Court has previously held that we review a trial court's adherence to Crim.R. 11(F) under the "substantial compliance" standard. *State v. Barnett*, 4th Dist. Scioto No. 12CA3527, 2013-Ohio-3838, ¶¶ 14-19. While we acknowledge that the trial court's recitation of the underlying plea agreement was not perfect in this case, we believe the court substantially complied with the requirements of Crim.R. 11(F). *See Id.* Therefore, we find that appellate counsel was not ineffective in failing to raise this issue on direct appeal.

In his second proposed assignment of error, Dawson contends that his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim in his direct appeal. In support of this proposed assignment of error, Dawson argues that his trial counsel was ineffective for (1) failing to ensure that the underlying plea agreement was stated on the record in open court in compliance with Crim.R. 11(F); and (2) for failing to enter an objection, or for failing to pursue some type of sentencing mitigation, or to move to withdraw the guilty plea, when it became clear that the trial court was not going to accept the joint sentencing recommendation.

Having just determined that the trial court substantially complied with the requirements of Crim.R. 11(F), we conclude that Dawson's appellate counsel was not ineffective for failing to raise an ineffective assignment of error based upon trial counsel's performance with respect to Crim.R. 11(F).

As to trial counsel's decision to not object to the trial court's imposition of a sentence beyond that jointly recommended by the parties, or to seek a motion to withdraw the guilty plea, we fail to see how counsel acted deficiently. It is undisputed that the trial court is not bound by the State's sentencing recommendation. *State v. Carpenter*, 4th Dist. Meigs No. 16CA11, 2017-Ohio-9038, ¶ 20. While Dawson continuously states in his application and accompanying materials that he was *promised* a three-year sentence, the Petition to Enter Plea of Guilty, which he signed and presented to the trial court, only states that the State would *recommend* a three year sentence, which it did at his sentencing hearing. The Petition to Enter Plea of Guilty also clearly states the maximum penalties involved and that the sentencing court could impose the same punishment as if Dawson had pleaded not guilty, stood trial, and been convicted by a jury. Thus, Dawson was forewarned that the trial court was not bound by the joint sentencing recommendation.

Finally, even if we were to assume, *arguendo*, that counsel acted deficiently, it would be entirely speculative and impossible for us to determine whether the trial court's sentence would have been different had counsel objected. *See, e.g., State*

11

v. *Underwood*, 5th Dist. Muskingum No. CT2017-0024, 2018-Ohio-730, ¶¶ 26-29; *see also State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 119 (mere speculation cannot support either the deficient-performance or prejudice requirements of an ineffective-assistance claim).  Thus, we cannot say that Dawson suffered prejudice.  Accordingly, we find that appellate counsel was not ineffective in failing to raise an ineffective assistance of trial counsel assignment of error on direct appeal.

(*Entry Denying Application to Reopen Appeal*, ECF No. 4, PAGEID # 160-64.)

This Court must, however, consider Petitioner's claim of the denial of the effective assistance of counsel *de novo* when determining whether a petitioner cause for a procedural default.  *See Hively v. Warden*, 2018 WL 722864, at *7 (S.D. Ohio Feb. 5, 2018) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir. 2009) ("An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not.")).

C.    *De Novo* **Review of Assertion of Ineffective Assistance of Counsel**

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "Only a right to 'effective assistance of counsel' serves the guarantee."  *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted).  The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984).  *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result.  *Id*. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S. Ct. 680 (2013).  A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'"  *Poole v.*

*MacLaren*, 547 F. A'ppx 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536

(6th Cir. 2011) (internal quotation marks omitted)); (citing *Strickland*, 466 U.S. at 687), *cert.*

*denied*, 135 S. Ct. 122 (2014). To make such a showing, a petitioner must overcome the "strong

[ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687. "To

avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v.*

*Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). . . . Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* . . . . . The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D.

Ohio Mar. 6, 2013). Factors to be considered in determining whether a defendant has been

denied the effective assistance of appellate counsel include:

(1) Were the omitted issues "significant and obvious"?

(2) Was there arguably contrary authority on the omitted issues?

(3) Were the omitted issues clearly stronger than those presented?

(4) Were the omitted issues objected to at trial?

(5) Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal
strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes*, 171 F.3d at 427–28 (citations omitted).

Here, the appellate court determined that the trial court complied with Ohio law in accepting the guilty plea and did not violate Ohio criminal rules. This Court is bound by that determination. *See Boddie v. Warden, Chillicothe Corr. Inst.*, No. 2:13-cv-1243, 2015 WL 792361, at *8 (S.D. Ohio Feb. 25, 2015) (citing *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Further, the state appellate court noted, Petitioner signed a Petition to Enter Plea of Guilty explicitly indicating that he understood that he faced the potential imposition of a maximum term of twelve years. (ECF No. 4, PAGEID # 28.) At the time of his guilty plea, Petitioner *again* indicated that he understood that he faced a maximum possible penalty of twelve years. (*Transcript*, ECF No. 5-1, PAGEID # 464.) Moreover, the trial court offered the following explanation during Petitioner's sentencing hearing:

> There's a person whose life has been lost because of your conduct. To me it's next to a murder case, okay. That's how serious this is. I know it's not murder, you're not charged with murder, otherwise you would be looking at being in prison for life. But you took a life. And here's what I read, and this just sets me off. This is her father, apparently to the responding officer.
>
> "Upon my arrival I spoke with the reportee and father of the victim Jay Lille. Mr. Lille advised that around 5:39 a.m. on today's date he went to the victim's room to check on her as he does every morning prior to getting ready for work." Here's a working man 5:39 a.m. in the morning checking on his daughter. Now that's responsible. "He was unable to get the door open and had to force the door open. Mr. Lille found that the victim had used a walking cane to keep the door shut. Mr. Lille saw his daughter sitting crossed legged on the floor with her head down

on the floor. Mr. Lille advised that he attempted to move his daughter and felt that she was cold. He was unable to pick her up so he requested his brother Lowell Lille come help him. Mr. Lille and his brother picked the victim up and carried her into the living room. Mr. Lille advised that the victim's seven-year old son ayden was still asleep in the bed and Mr. Lille was worried about him waking up and seeing the victim deceased on the floor."

Now that's probably etched in his mind the rest of his life. People say I'm sorry, I didn't mean for that to happen, what do you think is going to happen? Do you see what's going on in Ross County? Those people down there are getting heroin that's laced with Fentanyl that's killing them like flies. You people, you just amaze me. To bring this poison around and spread it around and get caught. You got caught. So you're going to pay the price. Let the message go out, you do this stuff in Pickaway County and you kill these people, you go to prison. You've been there before, our paths have crossed before.

I read the presentence investigation. I sent you to prison for nine months back in 2002 on assault on a peace officer. I remember that case. That's another crime that sets me off, is when people assault police officers. And you did that and you did nine months for that. I would think at that point in time, Mr. Dawson, that you would think hey, if I'm going to live in Pickaway County, maybe I ought to straighten up because this judge ain't going to put up with it, but you didn't.

And then you got all these possession of drugs, an F-5, which started out as an F-5 in municipal court. The law director, for whatever reason down there, decided to reduce it to attempted possession, an M-1, and gave you 120 days in jail and suspended it, $250.00 fine and cost, twelve months probation, not to use drugs of abuse. Then you come back in on possession of drugs in 2012, apparently out of Licking County, six months confinement at ODRC, one year license suspension, received Orient Correctional Institution on 2/5/13; drug paraphernalia 2007 in municipal court, $125.00 fine, DL suspended 12 months, gives you driving privileges, and then you had petty theft in '82 as a juvenile, possession of marijuana in 1981 in juvenile court. You just rang the bell today Mr. Dawson. So when you get out you can elect to live here in Pickaway County, Ohio, but if you do this kind of stuff and you get caught, don't come in and say I'm sorry, because that doesn't pay the piper.

(*Transcript*, ECF 5-1, PAGEID # 472-75.)

In view of the foregoing, the appellate court correctly determined that Petitioner cannot establish prejudice as that term is defined under *Strickland* based on his attorney's failure to object to the trial court's imposition of the maximum sentence.

Because Petitioner has failed to establish a claim for ineffective assistance of appellate counsel, he cannot establish cause for his procedural default.

## III.   DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE